***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Gillen with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Commission and subject to the terms of the Workers' Compensation Act. The Commission has jurisdiction over the parties and the subject matter.
2. Plaintiff was an employee of defendant-employer. The workers' compensation carrier is ISurity, Inc.
 ***********
The following were entered into evidence as:
 STIPULATED EXHIBITS a. The Pretrial Agreement, marked as stipulated exhibit 1.
 b. The Industrial Commission Forms filed in this matter, marked collectively as stipulated exhibit 2.
 c. Plaintiff's medical records.
 ***********
The following were entered into evidence as:
 EXHIBITS a. A document entitled "Time and Attendance" with plaintiff's work schedule and time worked information, marked as defendants' exhibit 1.
 b. A timeline of this case signed by Production Manager Gary Aycock and dated October 16, 2008, marked as defendants' exhibit 2.
 c. An additional document entitled "Time and Attendance" with plaintiff's work schedule and time worked information, marked as defendants' exhibit 3.
 *********** *Page 3 RULINGS ON EVIDENTIARY MATTERS
1. On January 24, 2010, plaintiff filed a Motion to Consider Additional Evidence with the Full Commission. Specifically, plaintiff requested that the parties be allowed to depose Dr. Sameer Mathur regarding his opinions as to the injury to plaintiff's back, future treatment, and disability, if any. Defendants did not object. On February 15, 2010, an Order was filed by Chair Pamela T. Young holding plaintiff's Motion to Consider Additional Evidence in abeyance until consideration by the Full Commission at the hearing of the matter. The Full Commission, in its discretion, hereby DENIES plaintiff's Motion to Consider Additional Evidence.
2. On April 27, 2010, defendants filed a Motion to Admit Additional Evidence, namely a recently obtained video surveillance tape of plaintiff which was presented during the deposition of Dr. Mathur, and the affidavits of Stephen Parker and Gary Aycock, employees of defendant-employer who positively identified the individual in the video as plaintiff. Plaintiff objected. The Full Commission, in its discretion, hereby DENIES defendants' Motion to Admit Additional Evidence.
 ***********
Based upon all of the competent credible evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on January 19, 1966. Plaintiff graduated from high school but received no further education. Plaintiff's vocational history prior to working for defendant-employer includes only heavy labor jobs such as sheetrocking and welding.
2. Plaintiff began working in defendant-employer's "Laminate" department in 2008. Plaintiff's position also required him to complete tasks for other departments, such as the "Cut Out" *Page 4 
department. Among the physical tasks required of plaintiff were spraying, sanding, and gluing furniture. Plaintiff's position with defendant-employer required the regular lifting of items weighing from 5 to 200 pounds out of large cardboard boxes. When lifting items out of these large cardboard boxes, plaintiff and the other employees were required by defendant-employer to attempt to preserve the cardboard boxes for reuse. This policy often dictated that plaintiff lift items in awkward positions and/or while leaning over.
3. On September 4, 2008, plaintiff was working in the "Laminate" department on a special J.C. Penney project. On this day, for this project, plaintiff was required to lean over and awkwardly lift heavy items out of boxes so as to preserve the boxes for reuse. Plaintiff felt back tightness at the end of the workday on September 4, 2008. By the time plaintiff arrived home, he could barely get out of his car due to this back tightness. Although plaintiff's medical history includes a 1999 back injury and resulting surgery at the L4 level, plaintiff had no significant back problems or work limitations until September 4, 2008.
4. On Friday, September 5, 2008, plaintiff reported to work, notified supervisor Gary Aycock about his back problems, and told Mr. Aycock that he could not lift that day. Mr. Aycock informed plaintiff that he would not be required to lift that day, and plaintiff was assigned to the "spraying" task.
5. Although he was still experiencing back tightness, plaintiff reported to work the following Monday.
6. Plaintiff first sought medical attention on September 15, 2008, when he was seen by Dr. Michael Sunderman. The medical note from this date documents that plaintiff reported back pain as the result of awkward lifting while working for defendant-employer. The note specifically reflects a diagnosis of back pain and indicates that the cause appeared to be overuse *Page 5 
and/or strain. In the note, Dr. Sunderman also imposes work restrictions, stating "I am going to let him return to work, but we are going to put a limitation on him of 15 pounds of lifting and no longer than 9 hours on the job. I have asked him to avoid repetitious bending, lifting, and twisting."
7. A September 29, 2008 medical note generated after plaintiff's visit to Dr. Sunderman on that date documents that plaintiff had recently attempted to fish from a pier for about four (4) hours and woke up with extreme back stiffness the next day. In this medical note, Dr. Sunderman also wrote: "[Plaintiff] is not working now because his company says they do not have light duty for him with the restrictions we have given him before."
8. The evidence of plaintiff's fishing activities does not depict plaintiff engaged in any activity materially inconsistent with plaintiff's testimony or the information plaintiff provided to his doctors.
9. Plaintiff last saw Dr. Sunderman on October 13, 2008. The medical note from that visit does not change plaintiff's work restrictions and notes that plaintiff had "[p]ersistent back pain — both thoracic and lumbar." This note also refers plaintiff to an orthopedic specialist.
10. Plaintiff was terminated by defendant-employer shortly after the September 4, 2008 incident. At that time defendant-employer informed plaintiff that they did not have sufficient work within his restrictions and that his services were no longer needed. The time and attendance records admitted into evidence indicate that plaintiff last worked for defendant-employer on September 9, 2008.
11. Due to financial issues and defendants' denial of this claim, plaintiff was not able to receive treatment from a doctor subsequent to October 13, 2008 and never saw an orthopedic specialist. Defendants filed a Form 61 dated November 19, 2008. *Page 6 
12. Dr. Sunderman testified by deposition to a reasonable degree of medical certainty that a lifting incident such as the one suffered by plaintiff on September 4, 2008 "could very easily be the source of [plaintiff's] back pain." Dr. Sunderman further testified that, if plaintiff were in the same pain as he was on October 13, 2008, that the restrictions Dr. Sunderman imposed on September 15, 2008 would still be applicable.
13. Regarding his current pain, plaintiff testified that he has steady pain that varies greatly in intensity.
14. The circumstances of plaintiff's workplace incident of September 4, 2008 constituted a specific traumatic incident of the work assigned that arose out of and in the course of his employment with defendant-employer during a judiciably cognizable time period.
15. The credible medical and vocational evidence of record shows that, as a result of his September 4, 2008 injury, taking into account both his physical and vocational limitations, plaintiff has been totally disabled and unable to earn any wages in any employment from September 10, 2008 and continuing.
16. The undersigned has considered the methods for calculating average weekly wages set forth in N.C. Gen. Stat. § 97-2(5) and finds the first method to be appropriate in this case. The second through fifth methods are therefore inappropriate.
17. According to the Forms 22 submitted in this matter, plaintiff earned $26,695.44 during the period of 52 weeks from September 10, 2007 through September 9, 2008. This amount, divided by 52, results in an average weekly wage of $513.37. Plaintiff's average weekly wage of $513.37 yields an appropriate weekly workers' compensation rate of $342.26.
18. Plaintiff has received unemployment benefits for which defendants are entitled to a credit. *Page 7 
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. In order to establish a compensable injury to the back, plaintiff must prove that the disabling back injury arose out of and in the course of the employment and was the direct result of either an accident or a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6); Richards v. Town of Valdese,92 N.C. App. 222, 224, 374 S.E.2d 116, 118 (1988), disc. reviewdenied, 324 N.C. 337, 378 S.E.2d 799 (1989). Under the specific traumatic incident theory, plaintiff is not required to prove that the injury arose from an unusual occurrence or departure from ordinary duties. Fish v. Steelcase, Inc.,116 N.C. App. 703, 707, 449 S.E.2d 233, 237 (1994), cert.denied, 339 N.C. 737, 454 S.E.2d 650 (1995).
2. Furthermore, our courts have held that an injury is compensable if it is caused by an accident that arises out of employment, materially accelerates or aggravates a pre-existing condition, and proximately contributes to disability. N.C. Gen. Stat. § 97-2(6); Brown v. Family Dollar Distrib.Ctr., 129 N.C. App. 361, 364, 499 S.E.2d 197, 199 (1998).
3. On September 4, 2008, as plaintiff awkwardly lifted an item out of a large cardboard box, he sustained a compensable injury to his back as a result of a specific traumatic incident of the work assigned that arose out of and in the course of his employment with defendant-employer during a judiciably cognizable time period. N.C. Gen. Stat. § 97-2(6); Fish v. Steelcase,Inc., 116 N.C. App. 703, 707, 449 S.E.2d 233, 237 (1994),cert. denied, 339 N.C. 737, 454 S.E.2d 650 (1995). This compensable injury caused plaintiff's back condition or materially accelerated or aggravated a pre-existing non-disabling back condition. N.C. Gen. Stat. § 97-2(6); *Page 8 Brown v. Family Dollar Distrib. Ctr.,129 N.C. App. 361, 364, 499 S.E.2d 197, 199 (1998).
4. Given the credible medical and vocational evidence of record, and plaintiff's compensable injury of September 4, 2008, plaintiff was temporarily totally disabled and is entitled to temporary total disability compensation at the rate of $342.26 per week for the period from September 10, 2008 and continuing until plaintiff returns to work or further order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowes Prod. Distribution,108 N.C. App. 762 (1993).
5. According to Russell, plaintiff can prove disability four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowe's Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). In the present case the evidence shows that, given plaintiff's current physical and vocational limitations, plaintiff is incapable of work in any employment.
6. Regarding plaintiff's average weekly wage, the applicable method of calculation is the first method under N.C. Gen. Stat. § 97-2(5). According to the Forms 22 submitted in this matter, plaintiff earned $26,695.44 during the period of 52 weeks from September 10, 2007 through September 9, 2008. This amount, divided by 52, results in an average weekly wage of *Page 9 
$513.37. Plaintiff's average weekly wage of $513.37 yields an appropriate weekly workers' compensation rate of $342.26. N.C. Gen. Stat. §§ 97-2(5); 97-29.
7. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendants provide all medical treatment, incurred or to be incurred, necessitated by the September 4, 2008 compensable back injury when bills for the same have been approved pursuant to Industrial Commission Procedures. N.C. Gen. Stat. §§ 97-2(19);97-25; 97-25.1.
8. Pursuant to N.C. Gen. Stat. § 97-42.1, defendants are entitled to a credit for unemployment benefits plaintiff received subsequent to the September 4, 2008 injury.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Given the credible medical and vocational evidence of record, and plaintiff's compensable back injury, defendants shall pay plaintiff, subject to the attorney's fee approved below and the credit owed defendants for plaintiff's unemployment benefits, temporary total disability compensation at a rate of $342.26 per week for the period from September 10, 2008 and continuing until plaintiff returns to work or further order of the Commission.
2. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, defendants shall pay all medical expenses incurred or to be incurred as a result of the compensable back injury sustained by plaintiff on September 4, 2008 when bills for the same have been approved pursuant to Industrial Commission Procedures.
3. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: *Page 10 
Twenty-five percent of any lump sum due plaintiff shall be deducted and paid directly to plaintiff's counsel. Thereafter, plaintiff's attorney shall receive every fourth compensation check due plaintiff.
4. Hearing costs have already been assessed pursuant to North Carolina Workers' Compensation Rule 611(6).
5. Defendants shall pay the court costs.
This the 27th day of May, 2010.
 S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/___________________ PAMELA T. YOUNG CHAIR
S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1